IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

|                              |   |                                      |
|------------------------------|---|--------------------------------------|
|                              | ) |                                      |
|                              | ) |                                      |
| KARL DEAN MODDERMAN,         | ) | Civil No.  2:04-CV-1165 BSJ          |
|                              | ) | Crim No. 2:03-CR-587 BSJ             |
| Petitioner,                  | ) |                                      |
|                              | ) | **MEMORANDUM DECISION &**            |
| vs.                          | ) | **ORDER**                            |
|                              | ) |                                      |
| UNITED STATES OF AMERICA,    | ) |                                      |
|                              | ) |                                      |
| Respondent.                  | ) |                                      |
|                              | ) |                                      |
|                              | ) |                                      |

```
                                        FILED
                        CLERK, U.S. DISTRICT COURT
                           July 7, 2005 (2:16pm)
                            DISTRICT OF UTAH
```

\* \* \* \* \* \* \* \* \*

Karl Dean Modderman ("Modderman" or "Petitioner") filed a Motion to Vacate,

Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 on December 20, 2004.  (*See*

Pet.'s Mot. (dkt. no. 3), 2:04-cv-1165.)  The United States of America ("United States")

responded to Modderman's Motion on February 25, 2005 (*see* United States' Opp., (dkt.

no. 10), 2:04-cv-1165), to which Modderman filed his Traverse Reply on March 21,

2005.  (*See* Pet.'s Traverse Reply (dkt. no. 11), 2:04-cv-1165.)

**FACTUAL & PROCEDURAL HISTORY**

On July 23, 2003, the Grand Jury charged Modderman with ten counts of receipt

and possession of child pornography.  On September 30, 2003, Modderman pled guilty to

two counts: Count 1, Receipt of  Child Pornography and Count 2, Possession of Child

Pornography in violation of 18 USC § 2252A(a)(2) and § 2252A(a)(5)(B).  (*See* Minute

Entry, dated 9/30/03 (dkt. no. 13), 2:03-cr-587.)  In exchange for Modderman's plea, the

United States agreed to dismiss the eight remaining counts, recommend an offense level

adjustment for acceptance of responsibility and recommend a sentence at the low end of

the applicable sentencing guidelines range.  On December 17, 2003, the Court sentenced

Modderman to 41 months of imprisonment, followed by a three-year term of supervised

release.  (*See* Judgment and Commitment, filed 1/12/04 (dkt. no. 21), 2:03-cr-587

("Jdgmt.").)  Modderman did not appeal his judgment of conviction to the United States

Court of Appeals for the Tenth Circuit.  On December 20, 2004, Modderman filed this §

2255 Motion.  (*See* Pet.'s Mot. (dkt. no. 3), 2:04-cv-1165.)


## DISCUSSION

Modderman asks this Court to set aside his sentence because it is unlawful under

*Blakely* and/or *Booker*.  He further requests that the Court resentence him under United

States Sentencing Guidelines ("U.S.S.G.") § 2G2.4 instead of § 2G2.2, without a four-

level enhancement for violent content.  Modderman further requests that his conditions of

supervised release be modified to allow him to have contact with minors, as long as a

responsible adult is present, and any other relief deemed appropriate.  (*See* Pet.'s Mot. at

9 ¶IV.)

The United States argues that Modderman is procedurally barred from challenging

2

his sentence since he fails to show cause for not raising the issue on direct appeal.  The United States further argues that Modderman was properly sentenced under the Guidelines, and that the terms of Modderman's supervised release are constitutional.

Modderman argues that he is excused from his procedural default by ineffective assistance of counsel.  (*See* Pet.'s Mot.; United States' Opp.; and Pet.'s Traverse Reply.)

A § 2255 motion may not be used as a substitute for an appeal.  An argument cannot be raised for the first time on collateral review unless the petitioner can show (1) cause and prejudice; or (2) a fundamental miscarriage of justice.  *United States v. Cervini*, 379 F.3d 987, 990-91 (10th Cir. 2004).  The latter exception, fundamental miscarriage of justice, generally requires that the petitioner prove his actual innocence.  *Cervini*, 379 F.3d at 991.  Modderman has indicated that he is not contesting his conviction; rather he is challenging his sentencing.  (*See* Pet.'s Traverse Reply, at 4:23-26.)  Modderman pled guilty to his offenses of conviction and makes no assertion of actual innocence.

The court therefore focuses on the former exception, that of cause and prejudice, where Modderman must show that circumstances external to himself caused a procedural default resulting in actual prejudice.  Here Modderman asserts ineffective assistance of counsel as the "cause" of his procedural default:

> "But for defense counsel's failure to make timely objections to such crucial applications, the defendant believes he might have received a substantially reduced sentence."

(*See* Pet.'s Traverse Reply at 3.)

A claim of ineffective assistance of counsel may "constitute cause and prejudice for purposes of surmounting the procedural bar." *United States v. Harms*, 371 F.3d 1208, 1211 (10th Cir. 2004). An ineffective assistance of counsel claim may be brought in a collateral proceeding under §2255, whether or not the petitioner could have raised the claim on direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003).

Attorney error or ignorance does not amount to "cause" for a procedural default unless the error rises to the level of constitutional ineffectiveness. A claim of ineffective assistance of counsel requires a showing (1) that counsel's representation fell below an objective standard of reasonableness and; (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

I.      **Modderman Received Effective Assistance of Counsel regarding *Blakely* and *Booker*; and Modderman's Sentence is Valid Under *Blakely* and *Booker*.**

Mr. Modderman asserts that his attorney should have brought up arguments relating to *Blakely* and/or *Booker* to dispute his sentence. A line of cases seemed to portend the Supreme Court's decision in *Booker*. In *Jones v. United States*, 526 U.S. 227 (1999), the Court overturned a sentence under the federal carjacking statute. The statute authorized a 15- or 25-year sentence, depending on whether the victim suffered "serious bodily injury." The Court concluded that treating the provision as a mere sentencing factor would raise serious Sixth Amendment concerns. Thus, the Court interpreted the

4

statute as creating an element of the offense which "must be charged by the indictment, proven beyond reasonable doubt, and submitted to the jury for its verdict." *Id.* at 252.

The next year, in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court struck down a New Jersey law by which the maximum sentence of a criminal defendant could be increased based upon the judge's determination, by a preponderance of the evidence, that the crime was motivated by bias. The Court held that under the Sixth Amendment, facts supporting an enhanced sentence must be found by a jury beyond a reasonable doubt. Shortly after *Apprendi* was decided, the Tenth Circuit held that it had announced a new procedural rule that was not retroactive to § 2255 proceedings. *United States v. Mora*, 293 F.3d 1213 (10th Cir. 2002).

Two years later, in *Ring v. Arizona*, 536 U.S. 584 (2002), the Supreme Court struck down an Arizona law which required the judge, after a jury had declared a defendant guilty of first-degree murder, to determine whether sufficient aggravating factors supported a death penalty. *Ring* held that a jury determination of aggravating factors was required.

In 2004, the Court decided *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531 (2004)*, which applied the *Apprendi* rule to Washington State's sentencing guidelines. *Blakely* cautiously defined the "statutory maximum" subject to a jury determination as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 124 S. Ct. at 2537. In a footnote, the

Court reserved on the issue of whether its holding would apply to the Federal Sentencing Guidelines. *Id.* at 2538 n. 9.

This year, in *United States v. Booker*, 543 U.S. ----, 125 S. Ct. 738 (2005), the majority opinion reviewed *Jones, Apprendi, Ring* and *Blakely*, and held that the Sentencing Reform Act of 1984 violated a defendant's Sixth Amendment right to a jury trial to the extent it mandates sentencing pursuant to the Federal Sentencing Guidelines, and that the Guidelines require a judge to sentence a defendant based on facts not admitted by the defendant or reflected in a unanimous jury verdict. *Booker*, 543 U.S. at ___, 125 S. Ct. at 756. The Court struck down the provisions of the statute that made the Guidelines mandatory, 18 U.S.C.A. 3553(b)(1), 3742(e).

Although in hindsight, it appears that the Supreme Court decisions like *Jones, Apprendi, Ring* and *Blakely* foretold the Supreme Court's holding in *Booker*, it is not unreasonable that Modderman's counsel did not raise a Sixth Amendment issue *pre-Blakely* and *pre-Booker*. *See United States v.* Webster, 392 F.3d 787, 796-797 (5th Cir. 2004) (citing *Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998) (counsel is not required to anticipate subsequent developments in the law)).

Thus, Modderman did not receive ineffective assistance of counsel as to these issues.

In any event, in determining Modderman's sentence, the Court accepted the defendant's plea and then applied the United States Sentencing Guidelines in effect in

2003.  Modderman argues that this mandatory application of the Guidelines constitutes reversible error under *Booker*.

Yet this case does not present a *Blakely* or *Booker* issue because Modderman was found guilty based upon: what he told the Court, what the United States told the Court, Modderman's testimony, what defense counsel told the Court, and Modderman's Statement in Advance of Plea.  (*See* Transcript of Hearing of Change of Plea, dated September 30, 2003 ("Tr. Plea"), at 14:15-20.)  However, even if the facts did present a *Blakely* or *Booker* issue, the rule of these cases would not apply in this case because they do not apply retroactively to cases on collateral review.

Where a Supreme Court decision results in a "new rule," that rule applies to all criminal cases still pending on direct review.  As to convictions that are already final, however, the rule applies only in limited circumstances.  While new substantive rules generally apply retroactively, new procedural rules do not.  A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.  In contrast, rules that regulate only the manner of determining the defendant's culpability are procedural.

The Tenth Circuit has held that *Blakely* and *Booker* are new rules of criminal procedure that do not apply retroactively to sentences that have become final.  *See United States v. Bellamy*, 2005 WL 1406176 (10th Cir. June 16, 2005), *United States v. Price,* 400 F.3d 844, 847 (10th Cir. 2004).

If a defendant files a direct appeal, his judgment of conviction does not become final until the conclusion of the appellate process. *See, e.g. United States v. Willis*, 202 F.3d 1279, 1280-81 (10th Cir. 2000) (a judgment of conviction is "final" for purposes of the one-year limitation period in § 2255 when the United States Supreme Court denies a petition for writ of certiorari after a direct appeal).

Fed. R. App. P. 4(b)(1)(A) provides that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after . . . (i) the entry of either the judgment or the order being appealed; . . . ."  The judgment of conviction was entered in Modderman's criminal proceeding on January 12, 2004, the time for Modderman to file a notice of appeal expired ten days later on January 22, 2004, *see* Fed. R. App. P. 26(a).  Furthermore, Fed. R. App. P. 4(b)(1)(B) provides that "[w]hen the government is entitled to appeal, its notice of appeal must be filed in the district court within *30 days* after the later of: (i) the entry of the judgment or order being appealed; or  (ii) the filing of a notice of appeal by any defendant." (Emphasis added.)

The time for an appeal by the government lapsed February 12, 2004.  Thus, Modderman's judgment of conviction had become "final" on that date for purposes of Pet.'s Mot. filed December 20, 2004.

New procedural rules generally do not apply retroactively, unless they fall into one of two narrow exceptions: (1) a new rule that places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe;

8

and (2) a new watershed rule of criminal procedure implicating the fundamental fairness and accuracy of criminal proceedings.  *See Teague v. Lane,* 489 U.S. 288, 307 (1989).

Modderman's sentence remains valid notwithstanding *Blakely* and *Booker*.

## II.     Modderman's Sentence is Valid Under the Guidelines.

The Sentencing Guidelines in effect in 2003 contain separate provisions covering receipt and possession of child pornography.  *Compare* U.S.S.G. § 2G2.2 (the provision covering receipt), with U.S.S.G. § 2G2.4 (which covers possession).  Modderman was sentenced using § 2G2.2 with a Base Offense Level of **17**.  The level was increased by the following adjustments: two levels because the material involved a prepubescent minor or a minor under the age of twelve years; four levels because the material involved sadistic or masochistic conduct or other depictions of violence; and two levels because a computer was used for the transmission, receipt, or distribution of the material.  *See* U.S.S.G. § 2G2.2(b)(1); (b)(3); and (b)(5) (2003), respectively.  The Offense Level was also decreased three levels because of acceptance of responsibility and timely notification, *see* U.S.S.G. § 3E1.1 (2003), resulting in an Adjusted Offense Level of **22**.  Under Criminal History Category I, the applicable guidelines range for sentencing is 41-51 months.  Modderman was sentenced at the low end to a 41-month incarceration, with a three-year term of supervised release.

Modderman is attempting to vacate, set aside or correct the sentence this Court

imposed, asserting that he should have been sentenced under § 2G2.4.  Modderman

theorizes that defendants convicted of 'receiving' for the purpose of distribution ought to

be sentenced under § 2G2.2; but that defendants (like himself) convicted of 'receiving'

for personal possession should be sentenced under §2G2.4.  Modderman asserts that his

counsel should have objected to the application of § 2G2.2 to his sentence.  He further

asserts that this Court erred in making a four-level adjustment for possession of images

depicting violence.

A.    Modderman received effective assistance of counsel as to the application of
        U.S.S.G. § 2G2.2 (2003).

Modderman asserts that his attorney should have objected to the sentencing

applications because his possession of 32 pornographic photos of children on his

computer at work does not qualify as receipt under U.S.S.G. § 2G2.2, since he lacked the

intent to distribute the images.  (*See* Pet.'s Traverse Reply at 2.)  Modderman asserts that

he should have been sentenced using § 2G2.4 for "possession" of these materials.  He

cites to several cases not binding on this Court to support his claim: *U.S. v. Dodds,* 347

F.3d 893 (11th Cir. 2003), *U.S. v. Malik*, 282 F. Supp. 2d 833 (ND Ill. 2003), *U.S. v.*

*Stromalski*, 318 F.3d 748 (7th Cir. 2003), *United States v. Laney*, 189 F.3d 954 (9th Cir.

1999), and *U.S. v. Davidson*, 360 F.3d 1374 (11th Cir. 2004).  The Court briefly analyzes

these cases as applied to the facts in Modderman's case.

*United States v. Laney*, 189 F.3d 954 is a "distribution" of child pornography case

which has no direct applicability to the present case.  In *Dodds*, 347 F.3d 893, the defendant was convicted of possession and receipt of child pornography.  The Eleventh Circuit in *Dodds* held that when a court applies § 2G3.1(c)(1)'s cross-reference, sentencing is appropriate under § 2G2.2 if the government can prove the defendant received the materials for the purpose of trafficking. *Dodds*, at 902.  The *Dodds* court relies on the *Stromalski*, 318 F.3d 748, in support of its holding.  *Dodds*, at 901. Stromalski was convicted of possession of child pornography (not receipt).  A closer reading of *Stromalski* indicates that the court did not accept the notion that "receipt with intent to traffic" is an exact synonym for "receipt."  *Stromalski*, at 752, 753.  *Stromalski* held that courts must approach sentencing first by applying the correct starting guideline relating to the charges in the indictment or information, then the only way to move to a different section is through the application of a cross-reference.  *Stromalski*, at 752 (citing *United States v. Rogers*, 270 F.3d 1076, 1083 (7th Cir. 2001).)  Here, the United States the court has not applied § 2G3.1(c)(1)'s cross-reference because Modderman admitted to both possession and receipt of child pornography as charged in Counts 1 and 2 in the indictment.

The *Malik* case is most similar to the present case where the district court found that following *Malik*'s guilty plea to both receiving child pornography and possessing child pornography, and that the more lenient guideline § 2G2.4 applied rather than § 2G2.2 because "receipt" is an ambiguous term.  *Malik*, 282 F. Supp. 2d 833, 838.

However, the United States appealed the district court's ruling to the Seventh Circuit.  On

September 22, 2004, the Seventh Circuit vacated and remanded the matter:

> When multiple counts are grouped for sentencing, U.S.S.G. §
> 3D1.3(a) requires the court to use whichever guideline yields the higher
> offense level.  That is § 2G2.2, which specifies a base offense two levels
> above § 2G2.4. . . .
>
> It is common for one course of conduct to violate multiple statutes
> and yield multiple convictions; it is common, too, for either the statutes or
> the guidelines implementing them to supply different sentencing ranges.
> When the same acts violate multiple laws, the prosecutor is free to choose
> the one with the highest sentence.  *See United States v. Batchelder*, 442
> U.S. 114 (1979).  When the offenses overlap so completely that the charges
> are multiplicitous– as, for example, when an indictment charges one person
> with robbing a bank and possessing the loot, see *United States v. Gaddis*,
> 424 U.S. 544 (1976)– the court vacates the less serious of the convictions,
> not the more serious one.  Just so with sentencing.  When one course of
> conduct violates multiple statutes, and the resulting convictions are grouped
> under U.S.S.G. § 3D1.2 for sentencing, the court must use the guideline for
> the most serious of the offenses.

*United States v. Malik*, 385 F.3d 758, 759 (7th Cir. 2004).

This court likewise so holds: when multiple counts are grouped for sentencing,

U.S.S.G. § 3D1.3(a) instructs the court to apply whichever guideline yields the higher

offense level – in this instance § 2G2.2, which specifies a Base Offense Level of **17**,

while § 2G2.4 specifies a base offense level of **15**.

Therefore, Modderman received reasonable and effective assistance of counsel as

to the application of U.S.S.G. §2G2.2 (2003).[1]

---

[1]In November 2004, § 2G2.4 was deleted and consolidated into § 2G2.2.  The
Commission's review indicated that,

> [I]ndividuals convicted of receipt of child pornography with no intent to

B.      Modderman received reasonable assistance of counsel as to the sentencing
        factors.

Modderman claims that he did not admit any facts relating to a four-level increase

for receipt and possession of images containing sadistic, masochistic or violent depictions

under U.S.S.G. § 2G2.2(b)(3) (2003).

The Court looks to the facts admitted by the defendant.  *Black's Law Dictionary*

defines admissions as: "confessions, concessions or voluntary acknowledgments made by

a party of the existence of certain facts.  More accurately regarded, they are statements by

a party, or someone identified with him in legal interest, of the existence of a fact which

is relevant to the cause of his adversary." *Black's Law Dictionary* 44 (5th ed. 1979).[2]

Defense counsel, acting on behalf of Modderman, filed a document captioned

---

traffic or distribute the material essentially will have an adjusted offense level of
level 20, as opposed to level 22. . . . [The Commission observed that] the conduct
involved in 'simple receipt' cases was indistinguishable from 'simple possession'
cases.  The statutory penalties for 'simple receipt cases', however, are the same as
the statutory penalties for trafficking cases.  Reconciling these competing
concerns, the Commission determined that a 2-level reduction from the base
offense level of 22 is warranted, if the defendant establishes that there was no
intent to distribute the material."

U.S.S.G. 2004, Supplement to Appendix C, Amendment 664, at 59, (effective 11/1/2004).  Thus,
if Modderman had been sentenced under the consolidated provision, his sentence would actually
have started out with a base level of **20**, which is three levels higher than U.S.S.G. § 2G2.2
(2003).

[2]Furthermore, in determining the factual basis for a plea, the court may find a factual
basis in anything that appears on the record.  An inquiry might be made of the defendant, of the
attorneys for the government, and of the defense, of the Presentence Report or by whatever
means is appropriate in a specific case."  (*See* 9 Fed. Proc., L.Ed. Criminal Procedure § 22:862,
at 345 (1993).)

"Defendant's Position with Respect to Sentencing Factors" on November 24, 2004 (dkt. no. 15). This document states, "after a review of the Presentence Report prepared by the United States Probation Office, he has no objections to any factors of said Presentence Report."[3] The Presentence Report made reference to the four-level adjustment for violent content.

The Court is hesitant, however, to consider this document as an "admission" of facts relevant to sentencing, especially in light of Modderman's claim of ineffective assistance of counsel. The facts relevant to sentencing must be "admitted by the defendant" himself, or "found by a jury beyond reasonable doubt." *Booker*, 543 U.S. at ___, 125 S. Ct. at 756. As such, Modderman correctly argues that did not admit to or concede to any fact relating to sadistic, masochistic or violent depictions in the images he downloaded on his computer at his change of plea, nor in his statement in advance of plea. Consequently, in this circumstance, the four-level increase ought not to be added to his Offense Level.

In addition, although Modderman mentioned in his pleadings that the number of pornographic images downloaded onto his computer was 32 images (*see* Pet.'s Traverse Reply, at 14:13), and although the Presentence Report similarly indicated that the images

_____

[3]In addition, Modderman signed his Statement in Advance of Plea, which states:
5.      I am satisfied with my lawyer.
6.      My decision to enter this plea was made after full and careful thought, with the advice of counsel, and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea. . .
(Statement in Advance of Plea, dated September 30, 2003 (dkt. no. 14), at 6.)

14

that were downloaded by Modderman were preserved on a recordable computer disc which was turned over to the case agent, and that the total number of images was 32 images, Modderman did not admit to or concede to any fact relating to the quantity of images downloaded to his computer at the hearing on his change of plea, nor in his statement in advance of plea.

This is relevant because effective April 30, 2003, amendment 649 modified U.S.S.G. § 2G2.2 to include a two-level increase for a quantity of images between 15 and 150. U.S.S.G., App. C, Vol. II, Amendment 649 (effective April 30, 2003). Accordingly, this two-level increase ought not to be added to Modderman's Offense Level.

Excluding these two adjustments, Modderman's Adjusted Offense Level would be **18**. The final calculation under a Criminal History Category of I would be a sentencing guideline range of 27 - 33 months. Thus, Modderman's 41-month sentence exceeds the applicable sentencing guideline range. Nevertheless, there appears to be no actual prejudice to Modderman because his sentence did not exceed the *maximum sentence* that could be imposed solely on the basis of the facts . . . admitted by the defendant, were *Booker* requirements to have been applied a full year before *Booker* was decided. Thus, even if defense counsel presented an *Apprendi* challenge in the context of mandatory guidelines relating to the 4-level enhancement for sadistic, masochistic or other depictions of violence, *Booker* negates this challenge because the guidelines are not mandatory and the maximum sentence that could be imposed is the statutory maximum of twenty years

for Count 1 and ten years for Count 2.  Modderman's sentence of 41 months– less than

four years– falls within that maximum limit.

Apart from the question of prejudice, the court must determine whether counsel's

representation fell below an objective standard of reasonableness in order to find "cause"

for Modderman's procedural default.

Modderman's counsel reasonably represented his client throughout the case.  Prior

to sentencing, Modderman's counsel filed a motion for downward departure pursuant to

U.S.S.G. § 5K2.0 based on aberrant behavior, negative effect on the defendant, his

employment, his family and his extended family; and vulnerability to abuse in prison

because of his sexual orientation and his size.  The Court denied the motion, finding that

each of Modderman's reasons standing alone or in combination was insufficient to justify

a downward departure.  (*See* Transcript of Hearing of Sentencing, dated December 17,

2003, at 18:14-21.)  The record in this matter does not establish that petitioner received

inadequate representation by counsel; rather, this court finds that petitioner's counsel

exercised the effort and skill of a reasonably competent attorney in this matter and

concludes petitioner has failed to demonstrate ineffective assistance.

Furthermore, the transcript of the plea proceeding in Petitioner's case firmly

supports the conclusion that Petitioner's plea was voluntarily and knowingly made.

Petitioner responded affirmatively when asked by the court if he understood that by

entering the plea, there would not be any trial, there would not be any witnesses, there

16

would not be any confrontation, and there would not be any cross-examination.  (*See* Tr.

Plea, at 5-6.)  Petitioner responded affirmatively when asked whether he understood that

as a practical matter he could not appeal a lawful sentence.  (*See id.* at 6.)  The transcript

shows that the trial court expressly informed the Petitioner of the nature of the charge

against him and that the petitioner understood the counts.  (*See id.* at 4.)

| | |
|---|---|
| THE COURT: | Is the information given to us by the United States attorney accurate as far as you know? |
| THE WITNESS: | Yes, your Honor. |
| THE COURT: | Do you want to make any changes, additions, corrections, deletions? |
| THE WITNESS: | No, your Honor. |
| THE COURT: | . . . . Do you have any questions at all? |
| THE WITNESS: | No, your Honor. |
| THE COURT: | Never, never plead guilty to anything you are not guilty of. You know what you are doing? |
| THE WITNESS: | Yes, your Honor. |

(*Id.* at 12:14-25; 13:1.)

Counsel perhaps wisely so, elected not to object to or dispute the sentencing

factors taken into account in the Presentence Report.  As noted above, that calculation

yielded an Adjusted Offense Level of **22** with a sentencing guideline range of 41-51

months.  Modderman was sentenced at the low end of that range.

Neither the government nor the calculation in the Presentence Report took into

account the effect of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 103(b)(1)(E), 117 Stat. 650, 653, *codified at* 18 U.S.C.A. § 2252A(b)(1) (Supp. 2005), which amended the penalty provisions of § 2252A to provide that "[w]hoever violates, . . . paragraph (1), (2), (3), (4), (5), (6) of subsection (a) shall be fined under this title and imprisoned *not less than five years and not more than twenty years*," § 2252A(b)(1), and that "[w]hoever violates, . . . subsection (a)(5) shall be fined under this title or imprisoned not more than ten years, or both," § 2252A(b)(2), imposing a minimum mandatory 5-year sentence for the offense charged in Count 1 of Modderman's indictment and extending the maximum statutory sentence for Counts 1 and 2 to twenty and ten years, respectively.  If, as the United States submits, "[t]he PROTECT Act went into effect April 30, 2003," (United States Opp. at 6), then Modderman's offense of conviction on Count 1 was subject to this enhanced sentencing scheme.  Had the question of maximum sentencing ranges been scrutinized more closely in light of an objection based upon *Apprendi*, it seems likely that Court and counsel would have been apprised of the effect of the April 30, 2003 amendments to § 2252A(b), and Modderman's sentence may well have been different.

Moreover, considering that if Modderman had not entered a guilty plea in this case, if he had exercised his right to a jury trial, where evidence relating to the sadistic, masochistic or violent nature of the images, as well as evidence relating to the quantity of images downloaded would be provided to the jury, Modderman faced the possibility of a

18

jury finding facts relating to these factors potentially resulting in an adjusted Offense

Level of **24**, with 51-63 months incarceration as the applicable guideline range – a

sentence ten to twenty months longer than Modderman's current sentence.

### III.     The Conditions for Modderman's Supervised Release Are Appropriate and Modderman Received Effective Assistance of Counsel as to Conditions for Supervised Release.

Modderman disputes the third condition of his supervised release following

incarceration, specifically, that he is not to associate with anyone under the age of 18

years, with the exception of his son.  Modderman asserts that this condition is vague and

overreaching, and that it should be modified to allow him contact with minors, as long as

a responsible adult is present, and any other relief deemed appropriate.

The United States asserts that this condition is reasonably related to the protection

of the public and the rehabilitation of the defendant for the purpose of deterring

Modderman from further inappropriate behavior involving children.

The Court considered many factors in formulating Modderman's conditions of

supervised release.  The Court was cognizant of and sympathetic to Modderman when the

United States attempted to clarify whether Modderman's contact with his son be

supervised or unsupervised.  The Court permitted Modderman to have "unsupervised"

contact with his son, which previously was prohibited: "he's not charged with being a

pedophile.  He's charged with looking at some dirty pictures and there's a distinction.  So

I'm not restricting his contact with his son." (*See* Transcript of Hearing of Sentencing, dated December 17, 2003, at 22:14-18.)

The Court also considered Modderman's history, his friends' and family's recommendations, as well as a psychological/psychosexual evaluation with David Dodgion, Ph.D., at the Family Abuse Center for Treatment.  Dr. Dodgion provided a summary (recited in the Presentence Report) in which he recommended a similar prohibition of association with minors.

Broad discretion is afforded to district courts in imposing conditions of supervised release.  This condition reasonably relates to the protection of the public and rehabilitation of the defendant.  *See United States v. Iverson,* 100 F.3d 968 (10th Cir. 1996).  Therefore, a three-year term of supervised release without association with minors, excluding his son, is markedly appropriate.  For the reasons mentioned above, the Court further concludes that Modderman did not receive ineffective assistance of counsel for not objecting to the conditions of supervised release.


**CONCLUSION**

Based on this Court's review of Petitioner's motion, the United States' response, and the Petitioner's traverse reply, the Court concludes that Modderman failed to establish "cause" and/or "prejudice" excusing his failure to challenge his sentence on

direct appeal, thus, the sentence imposed by this Court as reflected in the Judgment should not be disturbed.

**IT IS ORDERED** that Petitioner's Motion for relief under § 2255 is DENIED and the above-captioned proceeding, DISMISSED.

DATED this _7th_ day of July, 2005.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge